

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT COURT

**YOLANDA SALDIVAR, Appellant**

**v.**

**LORIE DAVIS, et al, Appellees**

## APPELLANT'S BRIEF

## **PARTIES**

**Appellant** - Yolanda Saldivar

**Appellees** - Lorie Davis, Director of TDCJ-ID

Warden Melodye Nelson (Now Director Nelson) of TDCJ-ID

Assistant Warden Whitney Franks (Now Warden Franks

of TDCJ-ID)

UTMB Contractor

## TABLE OF CONTENTS

| NAME | PAGE |
|---|---|
| DUCKWORTH V. FRANZEN, 780 F.2d 645, 652 (CA & 1985) | 12 |
| ESTELLE V. GAMBLE, 429 U.S. 97 (1976) | 7,20,14,15 |
| FARMER V. BRENNAN, 511 U.S. 825, 835 (1994) | 7-9,12,14 |
| HAFER V. MELO, 502 U.S. 21, 25 (1991) | 23 |
| HELLING V. McKINNEY, 509 U.S. at 31, 125 L.Ed.2d 22, 113 S.Ct. 2475 | 12 |
| HUDSON V. PALMER, 468 U.S. 517, 526-27, 82 L.Ed.2d 393, 104 S.Ct. 3194 (1984) | 13 |
| KENTUCKY V. GRAHAM, 473 U.S. 159 (1985) | 23 |
| LaMARCA V. TURNER, 995 F.2d 1526, 1535 (CA 1993) | 16 |
| MANARITE V. SPRINGFIELD, 957 F.2d 953, 957 (CA 1997) | 16 |
| MONROE V. PAGE, 365 U.S. 167 (1961) | 6 |
| NORTON V. DiMAZANA, 122 F.3d 286, 292 (5th Cir. 1997) | 14 |
| ROBINSON V. CALIFORNIA, 370 U.S. 660, 666, 9 L.Ed.2d 758, 81 S.Ct. 1417 (1962) | 9 |
| RHODES V. CHAPMAN, 452 U.S. 337, 347 [69 L.Ed.2d 59, 101 S.Ct. 2392] (1981) | 10,12,13 |
| SHOMO V. CITY OF NEW YORK, 579 F.3d 176 (2nd Cir.2009) | 21 |
| TALAL V. WHITE, 403 F.3d 423 (6th Cir. 2005) | 7 |
| VARNADO V. LYNAUGH, 920 F.2d 320, 321 (5th Cir. 1991) | 14 |
| WHITLEY V. ALBERS, 475 U.S. 312, 319, 89 L.Ed.2d 251, 106 S.Ct. 1078 | 11 |
| WILSON V. SEITER, 501 U.S. 294, 298, 115 L.Ed.2d 271, 111 S.Ct. 2321 | 8,10,13,14,17 |

| | |
|---|---|
| Federal Rules of Appellate Procedure & 5th Circuit Rule 28 | 1 |
| Statement of the Legal Issue | 1 |
| Statement of the Case | 2-5 |
| Grounds for Review | 5-6 |
| Standard of Review | 6 |
| 28 U.S.C. §1983 | 6 |
| Argument and Authorities | 8 |
| TDCJ Policy ED 10.61, AD 10.63 | 9 |
| Conclusion | 25 |
| Certificate of Service | 26-27 |
| Parties | ii |
| Tables of Contents | iii |
| Certificate of Compliance | iv |

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with type-volume limitation,

typeface requirements, and type style requirements

1. This brief complies with the type-volume limitation of

   Fed.R.App.P. 32(a)(7)(B) because:

   [X] this brief contains less than 30 pages, excluding the

   parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)

   (iii), or

   [] this brief uses monospaced typeface and contains [state

   the number of] lines of text, excluding the parts of the

   brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2. This brief complies with the type face requirements of Fed.R.

   App.P. 32(a)(5) and the type style requirements of Fed.R.

   App.P. 32(a)(6) because:

   [X] this brief has been prepared in a proportionally spaced

   typeface using Swintec clear tech typewriter in 10 font

   characters with standard type style, or

   [] this brief has been prepared in a monospaced typeface

   using [state name and version of word processing program]

   with [state number of characters per inch and name of type

   style].

DATED: _10/27/16_                          _Yolanda Saldi_

                                           Appellant

iv

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| YOLANDA SALDIVAR, TDCJ #733126 | § | |
| | § | |
| Appellant | § | |
| | § | |
| v. | § | Civil No. 16-50917 |
| | § | USDC No. 6:16-CV-95 |
| LORIE DAVIS, DIR., et al | § | |
| | § | |
| Appellees | § | |

### APPELLANT'S BRIEF

Comes now, Yolanda Saldivar-Appellant, and files this Appellant's Brief as required by Fed.R.App.P. and 5th Cir.R. 28:

### STATEMENT OF THE LEGAL ISSUE

Appellant appeals the District Court's dismissal of her civil rights complaint pursuant to 28 U.S.C. §1915(e) for failure to state a claim. The issues on appeal are:

1) that the Appellees used reckless negligence by violating a prison rule. Appellees violated Appellant's rights under the 8th Amendment to the U.S. Constitution and caused Appellant pain, suffering, physical injury and emotional distress;

2) that the Appellees used poor judgment, wantonness, obduracy and sadically acts against the Appellant when Appellant was not violating any prison rule nor acting disruptively in any way. Appellees actions violated Appellant's rights under the 8th Amendment to the U.S. Constitution, and caused Appellant pain, suffering,

physical injury and emotional distress;

3) that by witnessing Appellees inaction in failing to correct an inappropriate assigned cell change and encouraging the continuation of keeping the Appellant in an unsafe cell ultimately causing the Appellant to sustain a physical injury violated Appellant's right under the 8th Amendment to the U.S. Constitution and caused Appellant pain, suffering, physical injury and emotional distress; and

4) that the Appellant has no plain, adequate or complete remedy at law to redress the wrongs described herein. Appellant has been irreparably injured by the conduct of the Appellees and seeks relief from this Court to grant the compensatory and punitive damages the Appellant seeks.

## STATEMENT OF THE CASE

1. **MAY 20, 2015:** Appellant was assigned to a <u>TOP BUNK BED</u> from a <u>BOTTOM BUNK BED</u>. A top bunk bed is 60 feet or so off the ground. The Appellant informed Sgt. Briggs and former Lt. Hocutt of her difficulty climbing up and down a top bunk bed because of her 4 feet 10 inch height, obesity and medical condition. The Appellant takes heart and thyroid medications.

2. The Appellant was "<u>NEVER</u>" assigned to a top bunk bed, the reasons were obvious.

3. **MAY 21, 2015:** Appellant informed Sgt. McGill about her difficulty climbing up and down her top bunk bed and fear of falling.

4. Nurse Williams informs officer Nunn that a bottom bunk bed restriction had expired because it was not indefinite.

5. Lt. Evans denies Appellant's request to be moved to a safe cell with a bottom bunk bed.

6. **MAY 22, 2015**: Former officer Griffin witnesses Appellant having difficulty coming down the top bunk bed and feared the Appellant falling, voiced concerned for the Appellant's safety and well-being.

7. **MAY 26, 2015**: Officer Sohebi witnessed the Appellant fall and hitting her right side of her head, hip and ankle hard on the metal wall of her cell. Lt. Thatket was notified and Nurse Roanoke evaluated the Appellant at her cell side ordering an ice pack to her right side of her head for 24 hours and non-aspirin every 6 hours. Officer Sohebi filed an incident report and photos were taken of the Appellant's injuries. No efforts were made to move the Appellant to a safe cell with a bottom bunk bed, even though a cell was available.

8. **MAY 27, 2015**: Nurse Reinacher evaluated the Appellant for her continued headaches, dizziness and objects appearing to be lopsided. She was going to recommend the Appellant to a neurologist and would expedite her appointment to see a doctor.

9. **MAY 28, 2015**: Officer Davenport informed Nurse Northkett about Appellant's continued headaches and dizziness. Nurse Northkett tells the officer to have the Appellant lye on the floor with her mattress and that medical would see her. The Appellant was not seen by medical. The Assistant Warden Franks and Major

Williams were informed by the Appellant of her safety hazard with a top bunk bed cell and now head injury. They denied the Appellant's request to be moved to a bottom bunk bed. Warden Nelson now Director Nelson was informed by the Appellant and her family of the Appellant's safety hazard with a top bunk bed and request to be moved to a safe cell with a bottom bunk bed. The Appellant's request was also denied.

10. **MAY 29, 2015:** Officer Teaque informed medical of the continued symptoms of headaches and dizziness the Appellant was experiencing.

11. **MAY 30, 2015:** Officer Sorenson informed of the continued symptoms of headaches and dizziness the Appellant was experiencing. Appellant was given an ice cold washcloth to be placed on her forehead. But the officer refused to call medical. Later that evening and at the insistence of the Appellant's family, the Appellant was seen by Nurse Roanoke who examined the Appellant and found a hematoma on Appellant's right side of her head, her blood pressure was tilting 20 points standing and sitting and that she was dehydrated. Nurse Roanoke stated that the reason the Appellant had not seen a doctor was because there was no physician available.

12. **MAY 31, 2015:** Officer Sorenson informed of the continued symptoms of headaches and dizziness the Appellant was experiencing but refused to call medical.

13. **JUNE 1, 2015:** Officer Sorenson informed of the continued symptoms of headaches and dizziness the Appellant was experiencing. Nurse McCutchin stated to the Appellant that they were trying to

-4-

expedite her appointment to see a doctor.

14.  **JUNE 2, 2015:**  The Appellant informs Nurse Reinacher about her continued headaches and dizziness.  She informed the Appellant that they were trying to expedite her appointment to see a doctor. Nurse Reinacher was confused as to why the Wardens would not move the Appellant to a safe cell without a medical restriction when a safety hazard was evident.

15.  **JUNE 3, 2015:**  Officer Moore informed of the Appellant's coninued headaches and dizziness but refused to call medical.

16.  **JUNE 4, 2015:**  The Appellant woke up with a throbbing headache and upset stomach.  Officer Teaque notifies medical.  The Appellant had a family visit with her sister and niece.  At her visit, the Appellant vomited and former officer Horne notified Rank and medical.  The Appellant was finally seen by Dr. Burleson after 10 days post head injury.  He got authorization to order a CT Scan at Coryell Memorial Hospital.  The emergency room physician concluded and informed the Appellant that she had suffered a concussion and swelling with her fall and hitting her head that caused those symptoms she was experiencing.  He ordered intravenous medications to decrease the swelling and nausea.  The Appellant was then returned to her Unit and Dorm where she was moved from a top bunk bed to a bottom bunk bed with a medical restriction indefinitely.

**GROUNDS FOR REVIEW No. 1**

**APPELLANT'S FEDERAL CONSTITUTIONAL EIGHTH AND**

**FOURTEENTH RIGHTS WERE GROSSLY VIOLATED BY THE**

## DELIBERATE INDIFFERENCE OF PRISON OFFICIALS

### STANDARD OF REVIEW

28 U.S.C. §1983 states:

"Every person who <u>under color of any statute, ordinance,</u> <u>regulation, custom or usage, of any state or territory, or</u> <u>the District of Columbia,</u> subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the <u>deprivation of any rights,</u> <u>privileges, or immunities secured by the Constitution and</u> <u>laws,</u> shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

There are 2 requirements needed to show a person suffered a harm or suffered a violation of a constitutional rights. FIRST, §1983 applies to the "<u>deprivation of any rights, privileges, or</u> <u>immunities secured by the Constitution and laws</u>". This means that the actions a person is suing about must violate his/her <u>federal</u> rights. Federal rights are those given by the United States Constitution, Amendments to the Constitution, and laws passed by the United States Congress. The person suing needs to show that the way a prison official treated that person violates the United States Constitution or a law passed by the United States Congress. SECOND, §1983 also says "<u>under color of any statute, ordinance,</u> <u>regulation, custom or usage, of any state or territory</u>". Courts calls it "<u>under color of state law</u>" which means the violations of that person's rights must have been done by a state or local official, including a prison guard, prison doctor, or prison administrator (like a Warden). **MONROE V. PAPE**, 365 U.S. 167 (1961).

The Eighth Amendment forbids "cruel and unusual punishments" and protect a prisoner's right to safe and humane conditions in

prison. Where a prison official is responsible for unnecessary and wanton infliction of pain, the Eighth Amendment has been violated. "Wanton" means hateful, cruel and uncalled for. To prove an Eighth Amendment violation, the prison official(s) must:

a) act with <u>deliberate indifference</u> to a prison condition that

   (i) Deliberate indifference is when prison officials ignore an obvious and serious danger. **FARMER V. BRENNAN**, 511 U.S. 825, 835 (1994)

b) <u>exposes</u> a prisoner to an unreasonable risk of harm

   (i) exposure to an assigned unsafe cell causing an unreasonable risk of serious harm. **TALAL V. WHITE**, 403 F.3d 423 (6th Cir. 2005)

The Eighth Amendment protects a prisoner's right to medical care. Prison officials may not act with deliberate indifference to a serious medical need. To succeed in an Eighth Amendment challenge to the medical care in your prison, you must show three things: (a) you had a serious medical need; (b) prison officials showed "deliberate indifference" to your serious medical need; and (c) this deliberate indifference caused your injury. **ESTELLE V. GAMBLE**, 429 U.S. 97 (1976).

A government employee is negligent when he or she "fails to use reasonable care". Since people have different ideas about what is reasonable, Courts asks what a "reasonable prudent person" would do in a similar situation. There are four things a person needs to show in a negligence claim: duty, breach, causation and

damages.   Correctional officials do not have a duty to provide a
"risk-free" environment.   They do, however, have a duty to keep
prisoners safe and protect them from unreasonable risks.   To prove
negligence, the employee must have breached (failed in) this duty
to keep you safe.   The harm that a person suffered must have been
caused by the actions of the employee, not some other person or
event.

To challenge prison conditions using the 8th Amendment, you
must meet both "OBJECTIVE" and "SUBJECTIVE" requirements.   **FARMER**,
supra, 511 U.S. 825 (1994); **WILSON V. SEITER**, 501 U.S. 294 (1991).
To meet the "OBJECTIVE" standard, you need to show you were
deprived of a basic human need or exposed to serious harm.   Under
the "SUBJECTIVE" standard, you must show that the prison officials
you are suing KNEW you were being deprived or harmed and did not
respond reasonable.   You must also show HOW you were injured and
prove that the denial of a basic need caused your injury.   **FARMER**,
supra, at 825.   You must also show the prison official you are
suing ACTED with "deliberate indifference".   **WILSON**, supra.

### ARGUMENT AND AUTHORITIES

The Appellant contends that as a prisoner of the State of
Texas, she suffered "CRUEL AND UNUSUAL PUNISHMENT" at the hands
of prison officials when they knowingly and deliberately ignored
and disregarded a safety hazard that was a harbinger that an
injury could occur and "DID OCCUR".   Furthermore, medical attention
by TDCJ Contractor UTMB medical personnel in providing prompt
medical evaluation to Appellant's head injury by a physician

immediately following her fall was denied for 10 days. There is a specific TDCJ policy that constrains prison officials judgment other than the prison's general duty to house offenders to a particular cell and their decision-making ability. TDCJ safety policy ED.-10.61 by the authority of Tex.Gov't Code §493.006(b) states that TDCJ shall emphasize a safe environment for all employees and "OFFENDERS". TDCJ is committed to "COMPLIANCE" with all applicable "SAFETY RULES" and regulations. Employees shall follow all "SAFETY" policies and procedures and report "UNSAFE CONDITIONS", "HAZARDS", or acts as described in AD.10.63, "Operational Risk Assessment Program" and the TDCJ "Risk Management Program Manual". The Appellant asserts that she raised SAFETY and HAZARDOUS concerns to different prison officials about the unsafe cell with TOP BUNK BED thereby triggering the policy. Prison officials refused to listen to her pleas. She was forced to endure thsi safety hazard. And there is no doubt that the Appellant fell from her ASSIGNED TOP BUNK BED and sustained a HEAD INJURY to the right side of her head, an injury that was preventable had the prison officials ACTED with CAREFULNESS rather than RECKLESSLY, SADISTICALLY and WANTONNESS.

The Federal Constitution's 8th Amendment which applies to the states through the due process clause of the 14th Amendment, outlaws and prohibits the infliction of cruel and unusual "punishment" not "conditions" on those convicted of crimes. **FARMER V. BRENNAN**, 511 U.S. 825, 128 L.Ed.2d 811, 114 S.Ct. 1970; Crim Law §77; **ROBINSON V. CALIFORNIA**, 370 U.S. 660, 666, 9 L.Ed.2d

758, 81 S.Ct. 1417 (1962). An intent requirement is either implicit in the word "punishments" or is not; it cannot be alternately required and ignored as policy considerations might dictate. **WILSON V. SEITER**, 501 U.S. 302 (1991). "An express intent to inflict unnecessary pain is not required, **ESTELLE V. GAMBLE**, 429 U.S. 97, 104 [50 L.Ed.2d 251, 97 S.Ct. 285](1976) ('deliberate indifference' to a prisoner's serious medical need is cruel and unusual punishment), and harsh conditions of confinement may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society', **RHODES V. CHAPMAN**, 452 U.S. 337, 347 [69 L.Ed.2d 59, 101 S.Ct. 2392](1981)". As a defense prison officials cannot claim there was no intent to inflict unnecessary pain in assigning the Appellant to an unsafe cell. This defense is lame when repeated requests by the Appellant to be moved to a "SAFE" cell were denied by all of them. This denial was the conduit by which the Appellant suffered her fall and head injury. Their behavior is prohibited by the 8th Amendment against "cruel and unusual punishment". "After incarceration, only the unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the 8th Amendment". To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety...It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual

punishments clause...**WHITLEY V. ALBERS**, 475 U.S. 312, 319, 89
L.Ed.2d 251, 106 S.Ct. 1078.  The Appellees, directly or
indirectly, were involved in the process that place the Appellant
in an unsafe cell and on a course that the Appellant could be
injured.  The Appellant pleaded with every prison officials from
a correctional officer, to a Sgt., Lt., Major, Assistant Warden
and Warden.  The District Court ruled, "...she also admits she
did not notify Warden Nelson or Assistant Warden Franksof her fear
of falling from the top bunk until after her fall.  Thus, it
appears Plaintiff is attempting to hold these individuals liable
by virtue of their positions within the State as supervisors...
Only the direct acts or omissions of government officials, not the
acts of subordinates, will give rise to individual liability under
§1983..." (Doc 9 page 3 of 6)  The Appellant respectfully
disagrees.  No prisoner can demand to talk to the Wardens at a
moment's notice.  There is a chain of command a prisoner must
exhibit.  The Appellant dropped an I-60 form to medical as she was
repeatedly told by rank and file that no decision would be made
to move her to a bottom bunk bed unless she got a medical
restriction.  Therefore, when the Wardens made their rounds on May
28, 2015 (2 days after the Appellant's fall and head injury), the
Appellant took the opportunity to inform them of her safety hazard
and injury and request to be moved to a cell with a bottom bunk
bed.  It is their "**OMISSION**" to act by denying Appellant's request
to be moved for her safety which does give rise to liability under
§1983 as the District Court ruled.  None heeded to her pleas.

Their stubborn lack of due care for the Appellant's safety was obduracy and wantonness imposing an undue form of punishment by refusing and denying a safe cell for the Appellant. "The infliction of punishment is a deliberate act intended to chastise or deter...DUCKWORTH V. FRANZEN, 780 F.2d 645, 652 (CA & 1985)". There was no reason to chastise or deter the Appellant as she was not violating any prison rule.

The Constitution "does not mandate comfortable prisons", RHODES V. CHAPMAN, 452 U.S. 337, 349, 69 L.Ed.2d 59, 101 S.Ct. 2392 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the 8th Amendment". HELLING V. McKINNEY, 509 U.S. at 31, 125 L.Ed.2d 22, 113 S.Ct. 2475. The Appellant was not requiring or mandating to be comfortable in prison. On the contrary, she felt unsafe in a cell where she had to climb up and down a top bunk bed. She feared falling and sustaining an injury which did occur as the Appellant feared. In FARMER V. BRENNAN, 511 U.S. 825, 128 L.Ed.2d 811, 114 S.Ct. 1970, the Court held that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health and safety; the official must both be aware of the facts form which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Prison officials knew about the Appellant's fears of falling and

the potential risk a top bunk bed posed to her but they chose to disregard this risk to Appellant's health and safety when they repeatedly "DENIED" her request to be moved to a safe cell.  This denial jeopardized the Appellant's health.  The prison officials were aware of the facts from which the inference could have been drawn, yet they acted unreasonable in every way.  The Amendment also imposes duties on those officials who must provide humane conditions of confinement; prison officials MUST ensure that inmates receive adequate food, clothing, shelter, and medical care and MUST "take reasonable measures to guarantee the safety of the inmates".  HUDSON V. PALMER, 468 U.S. 517, 526-27, 82 L.Ed.2d. 393, 104 S.Ct. 3194 (1984).  The safety of the Appellant was jeopardize and no reasonable measures to guarantee her safety were taken when Rank and file ignored her pleas to be move to a safe cell.  The Appellant was deprived of a basic human need (i.e. to be safe) and was exposed to a serious harm (i.e. head injury).  A constitutional violation occurs only where the deprivation alleged is, objectively, "sufficiently serious", WILSON V. SEITER, 501 U.S. 294, 298, 115 L.Ed.2d 271, 111 S.Ct. 2321; a prison official's act or omission must result in the denial of the "minimal civilized measure of life's necesities".  RHODES, supra at 347, 69 L.Ed.2d 59, 101 S.Ct. 2392.  Prison officials refused and denied to provide the Appellant the necessary means to be safe, free of any kind of injury.  It was objectively evident that the Appellant could not climb up or down a top bunk bed with her 4 feet 10 inches stature, obesity and medical condition.  A head injury, leg

or arm fracture was sufficiently serious that concerned the
Appellant. Her concerns were validated when she fell and sustained
a head injury.

"Deliberate indifference" is appropriate only in "cases
involving personal injury of a physical nature". **WILSON**, 501 U.S.
303. It means that the official knew of the condition and did not
respond to it in a reasonable manner. **FARMER**, at 825. In **ESTELLE**,
at 106, 50 L.Ed.2d 251, 97 S.Ct. 285, the Court distinguished
"deliberate indifference" to serious medical needs of prisoners...
from "negligen[ce] in diagnosing or treating a medical condition",
holding that only the former violates the clause. The United
States District Court ruled that the Appellant, "At most,
Plaintiff's allegations amount to a state claim of negligence..."
If head concussions are to be considered as a form of "negligence"
by prison officials, then the outcry among football players who
continously suffer head concussions in our society is without
merit if its not serious, correct? Is this what the Courts want
for society to believe that head concussions are not a serious
medical condition in need of medical attention when they occur?
Prisoners should not be discriminated in the level of medical care
in regards to head concussions versus any other sect of society.
Yet, this is what and how the Appellant was treated. The District
Court ruled that "Disagreement with a course of medical treatment
will not suffice. See **NORTON V. DIMAZANA**, 122 F.3d 286, 292 (5th
Cir. 1997); **VARNADO V. LYNAUGH**, 920 F.2d 320, 321 (5th Cir. 1991)".
(Doc 9 page 4 of 6) The Appellant respectfully disagrees and

contends that it is not alleging a disagreement with a course of medical treatment. A course of treatment entails a starting and ending point. The Appellant suffered a "head injury" much as is a broken leg injury or a burn in which medical attention is required to assess the damaged at the time it occurred. If this ruling from the District Court is allowed to stand, then prisoner's lives are in jeopardy because accidents and injuries will be considered of importance on a timeline care rather than on seriousness. The Appellant was not on a course of treatment for a head injury. The District Court also ruled that the "Plaintiff admits she received medical treatment immediately after her fall, subsequently saw a doctor for her injuries, and received a CT Scan and intravenous medications. Plaintiff further admits she received a lower bunk restriction..." (Doc 9 page 4-5 of 6) The Appellant respectfully disagrees with the District Court. The Appellant has stated that she saw "NURSE ROANOKE" (not a doctor) on the same day of her head injury. Exhibits submitted to the District Court show the nurse's evaluation notes of the Appellant's condition at the time of her fall. It is misleading when the District Court rules that the Appellant received medical treatment immediately after her fall when Appellant clearly stated to the District Court she was seen by a nurse, not a doctor. She saw a doctor "10 days" after her fall, not immediately after her fall.

The Court in **ESTELLE**, 429 U.S. at 103, held that the denial of medical care is "cruel and unusual"...it can result in physcial torture and/or pain without any penological purpose and the Court

also held that it is satisfied by something less than acts of omissions for the very purpose of causing harm or with knowledge that harm will result. There is no doubt that the Appellant suffered a head injury and sustained a concussion. When medical services by the prison official included only visits by nurses as adequate and appropriate, there is a disconnect. Nurses who cannot diagnose and cannot prescribe any medications, should not be the extend of medical care a prisoner should receive. The concussion the Appellant sustained was diagnosed "10 days later" on June 4, 2015 by an emergency room physician "and not" by the physician contracted by the prison system. Had the Appellant's symptoms not progressed to al thrombing headache, nausea and vomiting, there is a possibility that she would not have been seen by a physician for more days to come. A concussion is a serious medical condition needing prompt medical attention, not just visits by nurses. This was "cruel and unusual" because the Appellant suffered physical torture with her continued headaches, feeling off balance and nausea for 10 days. This was uncalled for. With "deliberate indifference" lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Court of Appeals have routinely equated "deliberate indifference" with recklessness. **LaMARCA V. TURNER**, 995 F.2d 1526, 1535 (CA 11 1993); **MANARITE V. SPRINGFIELD**, 957 F.2d 953, 957 (CA 1992). It is indeed fair to say that the prison officials acted with "deliberate indifference" against the Appellant to a substantial risk of a serious harm that was the equivalent of

reckless disregarding that risk.  This was an unjustifiable act
of a high risk of harm violating the Appellant's 8th Amendment
right against "cruel and unusual punishment".  Even medical
personnel acknowledged that the Appellant's "legs are not long
enough to stretch the distance for the rungs leading to top bunk".
The question still remains, "Why was the Appellant placed in an
unsafe cell where she could be injured and her pleas to be moved
denied?"

When the injury the Appellant sustained was completed, prison
officials next failure was to deny her medical care for 10 days.
The Appellant suffered her fall and head injury on May 26, 2015
and it was not until June 4, 2015 (10 days later) that she FIRST
saw a doctor for her injury.  The Appellant was deprived of a basic
human need (medical care) post head injury.  Her head concussion
went undiagnosed and unevaluated by any physician for 10 days.  It
was treated like as if her head injury was insignificant and
unimportant.  Prison officials had the culpable state of mind
necessary for the punishment to be regarded as "CRUEL AND UNUSUAL",
regardless of the actual suffering inflicted.  WILSON V. SEITER,
501 U.S. 294, 298, 115 L.Ed.2d 271, 111 S.Ct. 2321.

Prison officials and TDCJ'S contractor UTMB exhibited
"deliberate indifference" when the Appellant was NOT moved to a
safe cell with a bottom bunk bed before or immediately after her
head injury as neither entity would make a decision that would
ensure the Appellant's safety.  Their deliberate indifference
constituted wantonness and their inaction was malicious and

sadistic for the very purpose of causing harm to the Appellant. The Appellant filed Step I and II's grievances to correct these wrongs. The grievances were returned not addressing the issue but deflected the issues, the problem and no solution was set forth. It was egregious that prison officials would not consider moving the Appellant after so many pleas, requests and complaints against this safety hazard (even "more" so after her head injury) without medical intervention which did not come after 10 days post head injury. This goes against prison policy that the Appellant triggered with her complaints and against her constitutional right to be free from harm or injury. Prison officials cannot claim they enforce policy and on the other hand refuse to perform that same policy unless others intervene. Prison officials willingly disregarded the safety hazard and health risk that lead to the Appellant's head injury and disregarded the need for medical attention to be seen by a physician, "ALL IN VIOLATION OF THE APPELLANT'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT GUARANTEED BY THE 8th AMENDMENT TO THE UNITED STATES CONSTITUTION".

The Appellant also filed grievances against the UTMB contractor. By the time the grievances were returned with a response, the Appellant was seen by an emergency room physician, CT Scan done, intravenous medications given and a cell change with a bottom bunk bed.

OBJECTIVELY THE FACTS ARE:

(1)   that the Appellant was assigned to an UNSAFE CELL with a TOP BUNK BED;

(2)    that the Appellant made repeated requests to prison
       officials to be moved to a safe cell which were ignored;
(3)    that on May 26, 2015, the Appellant suffered a fall and
       injured her right side of her head, hip and ankle;
(4)    that the Appellant suffered post-injury headaches,
       dizziness and feeling off-balanced;
(5)    that the injury was serious enough to file an incident/
       injury report;
(6)    that the Appellant was seen by UTMB contractor nurses
       only, BUT NOT evaluated by a physician until after 10
       days post-head injury;
(7)    that the Appellant's symptoms continued for 10 days;
(8)    that the Appellant was finally seen by UTMB Dr. Burleson
       on June 4, 2015, 10 days after her head injury;
(9)    that the Appellant had a CT Scan done at Coryell Memorial
       Hospital;
(10)   that the Appellant received intravenous medications; and
(11)   that the Appellant was given a BOTTOM BUNK BED
       RESTRICTION INDEFINITELY.

The Petitioner's head injury and symptoms were SUFFICIENTLY
SERIOUS that steps (i.e. CT Scan) were taken to ensure that the
Appellant had not suffered a brain trauma and/or injury.  The
Appellant had suffered a CONCUSSION as the emergency room physician
informed the Appellant and intravenous medications given to
alleviate the symptoms.  But this action came at the expense of
the Appellant suffering for 10 days before any action was taken by
prison officials and/or UTMB contractor.  It is reasonably to
conclude that the Appellant was blatantly denied CONSTITUTIONAL
RIGHTS by prison officials and UTMB contractor and suffered
physical and mental anguish as a consequence.

The Appellant has shown under the SUBJECTIVE part of the
test to have met this 8th Amendment standard by showing that from
Warden Nelson to all those prison officials she supervises,
everyone was FULLY AWARE the Appellant was being deprived of a
basic human need (i.e. freedom from injury, medical care) and when

Appellant's pleas and complaints to them about her unsafe cell and head injury, they ignored them. This basic need was a minimal, civilized measure of life's necessities. Something prison officials could have provided <u>BUT DID NOT</u>. The Appellant has proven that her constitutional rights were severely violated in such a malice and sadistic way that was brutal and inhumane abuse of prison official's power. It is evident that the Appellant would not be moved by prison officials unless she got a medical restriction for a bottom bunk bed. Medical personnel could not see the Appellant because they had no providers available. Literally, the Appellant was obstructed from moving forward in order to resolve this issue. Instead, the Appellant was forced to endure an unsafe assigned cell, risk a physical injury (which did occur) and had no medical attention post head injury. Even after the Appellant suffered a head injury on May 26, 2015, the prison officials refused to move her. This behavior is the same as obduracy and wantonness.

The Appellant further argues and contends that the District Court dismissed the Appellant's §1983 complaint "without prejudice for want of jurisdiction" and ordered the clerk to e-mail a copy of the Court's order and the final judgment to the Pro se clerk for the United States District Court for the "EASTERN DISTRICT" of Texas. The Appellant resides at the Mountain View Unit, Coryell County, Gatesville, Texas where the Appellant's claim arose. Coryell County falls within the Western District of Texas, "<u>NOT</u>" in the Eastern District of Texas. According to the Law

Library at the Mountain View Unit venue's list, the Appellant
filed her §1983 complaint in the appropriate District Court where
her rights were violated.  If the District Court for the Western
District of Texas determined that the Appellant sued in the wrong
court, the Appellant's §1983 complaint should have been returned
back to the Appellant for "improper venue".  But instead, the
Western District Court of Texas ruled on the merits of the
complaint against the Appellant lacking the power to act by its
own admission.

The District Court concluded and ordered that the defendants
in their official capacities are barred by sovereign immunity.
Under Rule 15(a0 of the Fed.R.Civ.Pro., the Appellant has a right
to amend her federal §1983 complaint once if the complaint has a
problem as long as she does so within 21 days of the defendants
answering or filing a motion to dismiss.  Because the Court not
only dismissed the Appellant's complaint, it also ordered the case
closed, the Appellant was not given the opportunity afforded by
the federal statute as the case was closed and the Court did not
order the defendants to file an answer to the complaint nor did
the defendants file a Motion to Dismiss.  The Appellant believes
that the District Court's ruling against the Appellant is out of
character with Rule 15(a) and that had she been given the
opportunity to amend her complaint, she would have prevailed on
that merit.  The Court in **SHOMO V. CITY OF NEW YORK**, 579 F.3d 176
(2nd Cir. 2009) talks about how important it is to give pro se
prisoners a chance to amend their complaint.  It is important that

the Appellant be given the right to exercise amending her
complaint.

The District Court concluded that the Appellant failed to
state a claim upon which relief can be granted against the
defendants in their individula capacities.  The Appellant
disagrees.  The Appellant assures this 5th Circuit Court of
Appeals that upon filing her federal §1983 complaint to the
Western District Court, Waco Division, she submitted a Motion for
Leave of Court to file a memorandum of law citing authorities and
exhibits in support of her complaint stating a claim of a violation
of her 8th and 14th Amendments rights under the Untied States
Constitution.  The District Court made no acknowledgement or made
any ruling whether the memorandum was taken in review of the
totality of the complaint by the District Court.  Instead, the
Distict Court ordered the Appellant to file a "MORE DEFINITE
STATEMENT" in which Nine Questions were asked of the Appellant.
The Appellant fully complied with the District Court's order and
answered those questions.  The District Court ruled that the
Appellant failed to state a claim in her complaint nor in her
"MORE DEFINITE STATEMENT".  (Doc 9 page 1-6 of 6)  But the
Appellant asserts that in her memorandum she "DID" stated a claim
upon which relief may be granted which the District Court, for
whatever reason, set aside.  The Appellant in her "MORE DEFINITE
STATEMENT" to the District Court did a "SUMMARY" of the facts
within the memorandum.  The District Court took that "SUMMARY",
it seems to the Appellant, as the totality of the facts without

case law disregarding the memorandum containing arguments and authority in case law where the Appellant clearly stated a claim. Therefore, it stands to reason that the District Court did a miscarriage of justice when it disregarded the Appellant's memorandum, ordered a "MORE DEFINITE STATEMENT" instead, faulted the Appellant for not stating a claim when she actually did in her memorandum and then dismissing and closing the case altogether affording no remedy for the Appellant to dispute the ruling.

The Appellant makes an argument that a personal (or individual) capacity claim seeks monetary recovery payable out of the responsible officials personal finances. **HAFER V. MELO**, 502 U.S. 21, 25 (1991). Therefore, a personal capacity claim is not redundant or duplicative of a claim against a government entity. Liability may be imposed against defendants in personal capacity suits even if the violation of the Plaintiff's federally protected right was not attributable to the enforcement of a governmental policy or practice. "[T]o establish personal liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. **Id**. (quoting **KENTUCKY V. GRAHAM**, 473 U.S. 159 (1985). The Appellant reiterate to this Court that operations for the Mountain View Unit were under the command of former Warden and now Director Nelson who was responsible for the over-all decisions. She had the power to decide, reverse or leave in place any decisions concerning the well-being and safety of all prisoners. Assistant Warden Franks and those other subordinates under Director Nelson followed her

commands and mandates.  Director Nelson had the means to secure
the Appellant's safety by ordering she be moved immediately upon
learning of the safety hazard and injury.  SHE DID NOT.  Assistant
Warden Franks could have acted the same way, but did not.  Then
Director William Stephens and/or now Director Lorie Davis in their
individual capacity as Directors oversee operations of the Mountain
View Unit and enforce rules and policies.  Offenders cannot just
directly appeal to them unless administrative remedies (i.e. Step
I grievances) are filed and exhausted.  This policy is enforced
by the Director's such as Ms. Davis.  In addition, prisoners cannot
just request to see a doctor (UTMB physician) verbally or at a
moment's notice.  An I-60 form must be dropped, a nurse sick call
visit is schedule and then a referral is made to a doctor.  This
process takes weeks.  If post head injuries and/or symptoms, as the
Appellant experienced, are considered by prison officials and UTMB
contractor as insignificant, less serious and not in need of a
physician's attention, then prisoners are not under their mercy
but under their abuse of power.  It is evident that they have
acted in violation of the Appellant's rights by making her wait
for days to see a physician so that her bunk bed restriction could
be ordered and proper evaluation of her head injury which were
denied to her at the moment she sustained her injury.  This is
cruel and unusual punishment unmeritted and undeserving.

## CONCLUSION

WHEREFORE, the Appellant respectfully prays that this Court enter judgment in favor of the Appellant:

(1) because the United States District Court ruled that it lacked the power to rule in this case;

(2) because the Appellant was not given the opportunity to amend her complaint;

(3) because the Appellant has stated a claim of a violation to her 8th and 14th Amendment rights under the United States Constitution;

(4) because the Appellant suffered pain and suffering at the hands of prison officials and medical personnel; and

(5) because compensatory damages in the amount of $250,000.00 and punitive damages in the amount of $250,000.00 against the defendants is appropriate or any relief this Court deems just, proper, and equitable.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: __10/27/16__                    Respectfully Submitted,


_Yolanda Saldivar_

Yolanda Saldivar, TDCJ #733126
Appellant
Mountain View Unit
2305 Ransom Rd.
Gatesville, Texas 76528

## CERTIFICATE OF SERVICE

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via regular mail to the United States Court of Appeals, Fifth Circuit, 600 S. Maestri Place, New Orleans, LA 70130 on ___27th___ day of ___October___, 2016.

_Yolanda Saldi~_
Appellant

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via trucked mail through the TDCJ mailing system to Ms. Lorie Davis, Director of TDCJ-ID, Huntsville, Texas on ___27th___ day of ___October___, 2016.

_Yolanda Saldi~_
Appellant

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via truck mail through the TDCJ mailing system to Warden Melodye Nelson (Now Director Nelson), Gatesville, Texas on ___27th___ day, of ___October___, 2016.

_Yolanda Saldi~_
Appellant

## CERTIFICATE OF SERVICE (CONT'D)

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via truck mail through the TDCJ mailing system to Assistant Warden Whitney Franks (Now Warden Franks) to the Burnett Unit, Burnett, Texas on _27th_ day of _October_, 2016.

_Yolanda Saldi—_

Appellant

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via truck mail through the TDCJ mailing system to the UTMB Contractor – to the Senior Practice Manager per advise of the Patient Liaison Program, Mountain View Unit, Gatesville, Texas on _27th_ day of _October_, 2016.

_Yolanda Saldi—_

Appellant

32675-017

James Slaughter
United State Penitentiary
PO Box 3000
White Deer, PA 17887

OCT 28 2016

Legal mail

Notice of Appeal

United States
Office of the Clerk
F. Edward Hebert BUILDING
600 S. Maestri Place
New Orleans, Louisiana 70130-3408

MAILED FROM

U.S. POSTAGE
WHITE DEER, PA
WHITE
DEER
OCT 25 16
$0.00
R2305K13897Z-07

70130

1006

Expected Delivery Day: 10/31/2016
USPS TRACKING NUMBER